# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ──────────────────────────── ) | |
| JAMES B. FAUST, )  | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No.** |
| ) | **13-12032-FDS** |
| FRANK G. COUSINS, et al., ) | |
| ) | |
| **Defendants.** ) | |
| ──────────────────────────── ) | |

## MEMORANDUM AND ORDER

SAYLOR, D.J.

## I.    Introduction

On August 16, 2013, plaintiff James A. Faust, then a prisoner in custody at the Essex County Correctional Facility ("ECCF") and currently in custody at the Suffolk County House of Correction, filed a self-prepared complaint pursuant to 42 U.S.C. § 1983 against a number of ECCF officials or employees.[1]   The defendants include (1) Sheriff Frank Cousins; (2) Superintendent Michael Marks; (3) Deputy Superintendent Jason Faro; (4) Librarian Marita Klements; (5) Disciplinary Officer David Fortune; (6) Reporting Officer Jerome Jeillison; and (7) Lower Program Officer Robert Swiderski.

Faust's claims arise out of the surreptitious writing of a letter to Klements, the librarian,

---

[1] Faust is a frequent filer in this Court.  *See, e.g., Faust v. Horgan, et al.*, C.A. 12-12166-JLT (civil rights); *Faust v. Carbonneau*, C.A. 12-11674-NMG (civil rights); *Faust v. Defazio*, C.A. 12-11673-NMG (civil rights); *Faust v. Horgan*, C.A. 12-11289-MLW (habeas); *Faust v. Cabral, et al.*, C.A. 12-11091-DJC (civil rights); *Faust v. Horgan*, C.A. 12-11089-FDS (habeas); *Faust v. Cabral, et al.*, C.A. 12-11020 (civil rights); *Faust v. Cabral, et al.*, C.A. 12-10257-WGY (civil rights); *Faust v. Cabral, et al.*, C.A. 11-10422-DPW (civil rights); *Faust v. Hall*, C.A. 01-11210-NG (habeas).

which resulted in a disciplinary action against him.  Faust alleges that he was transferred

unlawfully to ECCF from the Suffolk County Sheriff's Department in retaliation for exercising

his constitutional rights.

Specifically, Faust contends that early in the morning of June 11, 2013, he went to the

prison law library and requested a computer flash drive on which various legal documents were

stored.  He then took the flash drive to a computer class in order to fix a problem with it.  The

same day, Klements informed him that he was not authorized to remove the flash drive from the

library.  She then contacted Deputy Superintendent Faro and informed him that Faust removed

the flash drive without authorization.  According to the complaint, Faro then had a conversation

with Faust about the matter and gave him permission to take his flash drive to class.  They also

discussed a job opening and Faust was told he could start working immediately in the lower

program area.  Faust returned to the library.  He spoke with Klements and accused her of

unlawfully censoring his legal documents.

The complaint alleges that on the following day, Faust was given permission by Lower

Program Officer Swiderski and Klements to go into their shared office and clear out their trash.

Trash removal was a task that Faust had performed every day.  On July 15, 2013, while he was

in the library, he overheard several inmates conspiring to write grievances against Klements for

censoring their legal documents and impairing their right to access the courts.  Faust then wrote

an anonymous letter to Klements informing her of her unlawful actions and advising her that

inmates were conspiring against her.  The letter was left in her office.

The following day, July 16, 2013, Faust was informed that he could not go to work

because he was under investigation by the ECCF Sheriff's investigation department.  Later that

day, he was moved to isolation/administrative segregation.  He was given a disciplinary report

for violating institutional rules or regulations, being out of place, and being in an area not

authorized and out of bounds.  He also was charged with conduct disrupting or interfering with

security or orderly running of the facility, use of obscene, abusive, or threatening language, and

taking action or making a gesture against person or property.  The complaint alleges that Fortune

failed to provide timely written notice of the time of his disciplinary hearing in violation of his

due process rights.

A disciplinary hearing was held on July 20, 2013.  Faust had requested the evidence

against him and also requested to call his own witnesses.  The hearing officer denied the request

allegedly without reason.  After a hearing, Faust was found guilty of all of the offenses except

for use of obscene, abusive, or threatening language or action.  The next day, he filed an appeal

to Superintendent Marks, alleging that his constitutional rights were violated because he was not

given proper notice of the disciplinary hearing, not allowed to call witnesses, and not given a

copy of the anonymous letter used against him, and because he was found guilty for exercising

his First Amendment rights by signing the anonymous letter to the librarian with the closure

"very truly yours" instead of his true name.  Finally, he alleged that Klements's actions

constituted unlawful censorship of legal documents.[2]

Count 1 of the complaint in this action alleges a violation of Faust's First Amendment

rights by defendant Klements, arising out of the allegedly unlawful disciplinary report based

solely on the contents of his letter.  Count 2 alleges violations of his Fourteenth Amendment

---

[2] The disciplinary appeal form submitted as an exhibit to the complaint indicates that the Superintendent's position is that Faust was given two days' prior notice of the hearing; that witnesses were not necessary, because he admitted to writing the letter to the librarian; that he did not have permission to enter the office; and that Faust knew the letter was inappropriate since he had asked the librarian to "get rid of the letter."

rights by Klements, based on the allegedly unlawful censorship of his legal materials. It also asserts a claim against Fortune and Marks for violation of his due process rights in connection with the disciplinary hearing and the failure to explain adequately the decision to discipline him.

As relief, Faust seeks declaratory relief that past actions violated his constitutional rights. He also seeks compensatory and punitive damages for his confinement in the isolation unit.

Along with the complaint, Faust filed a motion for leave to proceed *in forma pauperis*; however, he failed to submit a certified prison account statement as required by 28 U.S.C. § 1915(a)(2). As a result, on August 23, 2013, this Court issued a procedural order denying the *in forma pauperis* motion and directing him either to pay the $400 filing fee or file a renewed motion for leave to proceed *in forma pauperis*, accompanied by his certified prison account statement, within 21 days.

On September 17, 2013, this Court issued a memorandum and order dismissing this case without prejudice based on Faust's failure to comply with the directives concerning the filing fee. Copies of the memorandum and order were mailed to Faust on September 17, 2013, along with the order of dismissal. The package was sent to Faust at ECCF. Two days later, on September 19, 2013, the package was re-sent to Faust at the Suffolk County House of Correction. On September 30, 2013, the mail to Faust was returned as undeliverable.

On October 29, 2013, Faust filed a notice of change of address. Two weeks later, the clerk sent Faust a letter (Docket No. 11) advising him that his change-of-address form had been docketed; however, his other documents were returned to him because this case was closed and he had not indicated how he wanted the Court to consider his filings. The clerk advised that if he wanted this Court to consider reopening this action, he needed to file a motion to reopen.

On December 17, 2013, Faust filed a motion seeking to reopen this action on the grounds that he had not been informed by the Court of the acceptance of his complaint and he had been transferred from ECCF to the Suffolk County House of Correction in South Bay.  He contends that he only learned of the acceptance of the complaint by this Court through Suffolk County Legal Services.

**II.**     **Discussion**

    **A.**     **The Motion to Reopen Case**

This Court finds that plaintiff has demonstrated good cause to reopen this action based on his lack of notice.  Accordingly, the motion to reopen case will be granted.

    **B.**     **The Filing Fee**

Although plaintiff filed a motion to reopen, he did not pay the $400 filing fee or file a motion for leave to proceed *in forma pauperis*.  As this Court previously advised plaintiff, he is obligated to either pay the filing fee or file an *in forma pauperis* motion accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . obtained from the appropriate official of each prison at which the prisoner is or was confined."  28 U.S.C. § 1915(a)(2).

Plaintiff contends that he cannot force the Treasurer's Office to provide his prison account statement, but he has not provided any credible evidence that he attempted to obtain his statement for filing with the Court.

Accordingly, if plaintiff elects to proceed with this action, within 21 days of the date of this memorandum and order, he must either (1) pay the $400 filing and administrative fee, or (2)

file a renewed motion for leave to proceed *in forma pauperis* accompanied by his certified prison

account statement.  Failure to comply with this directive may result in a dismissal of this action.

      The Clerk is directed to provide plaintiff with an application to proceed in district court

without prepaying fees or costs.  The Clerk is also directed to send a copy of this memorandum

and order to the Treasurer's Office at the Suffolk County House of Correction in order to

facilitate any request by plaintiff for his certified prison-account statement.  The Court requests

that the Treasurer's Office include in any prison-account statement plaintiff's average monthly

deposits for the six-month period preceding the date the complaint was filed, as well as the

average monthly balance for that same period.

      **C.**     **Screening of the Complaint**

      This Court has the authority by statute to screen and dismiss certain types of prisoner

complaints.  *See* 28 U.S.C. § 1915 (proceedings *in forma pauperis)*; 28 U.S.C. § 1915A

(screening of suits against governmental officers and entities).

      Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to

proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact,

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989), or if the action fails to state a claim upon which

relief can be granted or seeks monetary relief against a defendant who is immune from such

relief.  *See* 28 U.S.C. § 1915(e)(2)(ii) and (iii).  Such complaints may be dismissed *sua sponte*

and without notice under section 1915 if the claim is based on an indisputably meritless legal

theory or factual allegations that are clearly baseless.  *Neitzke*, 490 U.S. at 327-328;  *Denton v.*

*Hernandez*, 504 U.S. 25, 32-33 (1992).

      Section 1915A authorizes the Court to review prisoner complaints in civil actions in

which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

Here, because plaintiff is not proceeding *in forma pauperis* at this time, the preliminary screening is conducted only pursuant to 28 U.S.C. § 1915A.

In connection with the preliminary screening, a *pro se* complaint is to be construed generously.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980);  *Haines v. Kerner*, 404 U.S. 519, 520 (1972);  *Instituto de Educacion Universal Corp. v. U.S. Dept. of Education,* 209 F.3d 18, 23 (1st Cir. 2000).

## D.       Rule 8 Pleading Deficiencies; Lack of *Respondeat Superior* Liability

Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to include in the complaint, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))*; see Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005).  It must afford the defendant(s) a "['] meaningful opportunity to mount a defense.'"  *Díaz-Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004) (quoting *Rodríguez v. Doral Mort. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995)).  *See also Redondo-Borges v. U.S. Dept. of Hous. and Urban Dev.*, 421 F.3d 1, 5 (1st Cir. 2005).  "In a civil rights action as in any other action . . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and

why." *Educadores Puertorriqueños en Acción v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004).

Here, the complaint alleges direct constitutional violations only against three defendants (Marks, Klements, and Fortune).  It fails, however, to set forth any factual allegations giving rise to § 1983 liability with respect to the remaining defendants (Cousins, Faro, Jeillison, and Swiderski).  Moreover, while the complaint names Faro as a defendant, the only actions attributed to him were that he gave plaintiff permission to take his flash drive to class and that he offered plaintiff a job.  There are no allegations that Faro had any involvement in the relevant incidents.  Similarly, the only allegation against Swiderski is that he gave plaintiff permission to enter the office shared with Klements in order to clear the trash.  And the complaint refers to alleged retaliation, but fails to set forth any factual underpinnings upon which a retaliation claim may be based.[3]

Furthermore, to the extent that plaintiff is seeking to hold Cousins and Faro liable for the actions of others, such claims are not cognizable under § 1983 because there is no *respondeat superior* liability.  *See Capozzi v. Department of Transp.*, 135 F. Supp. 2d 87, 98 (D. Mass. 2001) (citing *Ruiz Rivera v. Riley*, 209 F.3d 24 (1st Cir. 2000)).  "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983.  *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 156 (1st Cir. 2006) (quoting *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005)).  "In § 1983 cases, 'supervisors are not automatically liable for the misconduct of those under their command.

---

[3] A prisoner must prove three things to establish a retaliation claim:  (1) that he had engaged in a constitutionally protected activity; (2) that he suffered "some adverse action" at the hands of a prison official; and (3) that there is "a causal link between the exercise of [the] constitutional right[ ] and the adverse action taken." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Here, the complaint has alleged the first two elements, but fails to set forth facts from which a causal link between the exercise of the constitutional right and the adverse action may be reasonably inferred.

A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'" *Id.* (quoting *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000)). *See Pinto v. Nettleship*, 737 F.2d 130, 132 (1st Cir. 1984) (no *respondeat superior* liability under § 1983; liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights).

In light of the above, it would be unfair to require the defendants to respond to the complaint in its present form. The complaint is therefore subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (failure to state a claim upon which relief can be granted).

## III.   Order to Show Cause and File an Amended Complaint

In light of the above, this action will be dismissed unless, within 42 days from the date of this memorandum and order, plaintiff demonstrates good cause in writing why it should not be. In filing his show-cause response, plaintiff should not simply reiterate the claims in the original complaint, but should address specifically the legal impediments to his claims discussed above, including the Rule 8 pleading deficiencies and the lack of *respondeat superior* liability.

In addition to the show-cause response, plaintiff shall file, within 42 days of the date of this memorandum and order, an amended complaint that comports with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Any amended complaint must set forth the cause of action (that is, the legal theory of liability) asserted against each defendant separately, along with a brief statement of the underlying facts to support each claim (that is, the "who, what, when, where, and why" information required by the federal courts).

Failure to comply with these directives will result in dismissal of this action.

**IV.**    **Conclusion**

Based on the foregoing, it is hereby ordered that:

1.    Within 21 days of the date of this memorandum and order, plaintiff shall either shall pay

the $400 filing fee or file a renewed motion for leave to proceed *in forma pauperis* along with

his certified prison account statement;

2.    Within 42 days of the date of this memorandum and order, plaintiff shall file a show-

cause response demonstrating good cause why all claims in the complaint should not be

dismissed; and

3.    Within 42 days of the date of this memorandum and order, plaintiff shall file an amended

complaint in accordance with Rule 8 of the Federal Rules of Civil Procedure.  If the amended

complaint does not comport with Rule 8, or if it otherwise violates the terms of this order, the

complaint will be subject to dismissal.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  January 7, 2014